IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENYA GAYLES,

    Petitioner,                          No. CIV S-08-2774 GEB EFB P

    vs.

D.K. SISTO, Warden,                FINDINGS AND RECOMMENDATIONS

    Respondent.

_____/

    Petitioner is a state prisoner proceeding without counsel on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent moves to dismiss on the ground that this action is moot. For the reasons explained, the petition is moot and the motion must be granted.

**I.    Background**

    Prison authorities found petitioner guilty of excessive consensual contact with a female visitor on April 8, 2006. Pet'n, Ex. 5 at 3-4. Petitioner was counseled, reprimanded, and advised of future behavior expectations, but suffered no credit loss or other discipline. *Id.*, Ex. 5 at 4. By the instant habeas corpus petition, he seeks to have the disciplinary finding (known as a "CDC-115," or simply "115," after the form on which it is memorialized) expunged from his file. *Id.* at 18.

////

## II. Mootness

Under Article III, § 2 of the federal Constitution, a federal court's jurisdiction is limited to those cases which present "cases-or-controversies." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In habeas actions, the case-or-controversy requirement mandates that a petitioner must have suffered, or be threatened with, an actual injury traceable to the respondent and redressable by issuance of the writ. *See id.* In general, a habeas petition challenging a prison disciplinary action no longer presents such a case or controversy, and therefore becomes moot, when the punishment for the action has been withdrawn or completed at the time of the petition. *Wilson v. Terhune*, 319 F.3d 477, 479 (9th Cir. 2003). Where the petitioner can show that so-called "collateral consequences" flow from the disciplinary action (beyond the punishment imposed), however, the case remains justiciable. *Id.* at 479-80; *see Spencer*, 523 U.S. at 14-16. This Court must therefore determine whether petitioner has shown collateral consequences of the disciplinary action that cause his case to remain live.

Petitioner argues that the 115 carries collateral consequences because authorities have used and will continue to use it as a basis to deny him parole. He has attached the Governor's decision to reverse the Board of Parole Hearing's decision to grant him parole, in which the Governor stated:

> While incarcerated. Mr. Gayles was disciplined for lewd conduct in 2006. According to the Rules Violation Report, during a visit with a female, Mr. Gayles massaged his genitals to achieve an erection. He then attempted to force his visitor's hand toward his genitals. She pulled her hand away from his grip and they both walked away. When they returned to the table, Mr. Gayles reached under her skirt. This rules violation was under appeal at the time of Mr. Gayles' 2008 parole suitability hearing. But in discussing this incident, his 2007 mental-health evaluator noted that Mr. Gayles' "inability to fully explain his side of the events leaves questions about whether or not there remains some degree of 'blaming others' for his own poor impulse control decisions."

Pet'r's Opp'n to Resp.'s Mot. to Dism., Ex. A at 3 (page marked "Page 9 of 11"). The Governor went on to cite the following factors in support of his decision: (1) petitioner's "life crime" (a reference to the crime for which the petitioner was given a life sentence); (2) petitioner's lack of

2

insight into his life crime and lack of self-help regarding gangs and gang violence; and (3) petitioner's recent psychological evaluation, which rated him a moderate risk for future violence, placed him in the "medium category" for general recidivism, diagnosed him with Antisocial Personality Disorder, and expressed concerns about his parole plans. *Id.* at 3-4 (pages marked "Page 9 of 11" and "Page 10 of 11"). Thus, the Governor mentioned the CDC-115 at issue in this petition, but did not expressly count it as a factor weighing against parole.

In *Spencer v. Kemna*, the Supreme Court considered whether an order revoking parole carried collateral consequences. 523 U.S. at 14-16. The petitioner in *Spencer* argued that the order could be used against him in a future parole proceeding. *Id.* at 14. The Court found this possibility insufficient to be considered a collateral consequence, however, because, under state law, the order would be only one factor among many to be considered by the parole authority in a future parole proceeding, and the parole authority had almost unlimited discretion to determine suitability. *Id.*

In *Wilson v. Terhune*, the petitioner argued that a CDC-115 (based on an escape attempt) would adversely affect his future parole prospects. 319 F.3d at 482. The Ninth Circuit similarly concluded that such a possibility did not constitute a collateral consequence, because "the decision to grant parole is discretionary" and the 115 would be only one factor among many considered by the Board of Parole Hearings. *Id.*; *see also Carranza v. Gomez*, 221 Fed. Appx. 582, 583 (9th Cir. 2007) (characterizing *Wilson* as holding that "impaired parole prospects do not constitute collateral consequences."). The court also noted that the Board would likely consider the underlying conduct, which the petitioner did not deny, rather than the 115 itself, so expunging the 115 would not improve his parole prospects. *Wilson*, 319 F.3d at 482.

Here, unlike *Wilson*, petitioner denies the charges underlying the 115. It is therefore possible that expungement of the 115 from his record would improve his parole prospects to the extent that the 115, and the conduct underlying it, would no longer be considered by the Board or by petitioner's evaluating psychologists. However, the 115 remains but one consideration

3

among many reviewed by the Board and the Governor in deciding petitioner's parole suitability. While the Governor discussed petitioner's statements about the 115 to the evaluating psychologist in his decision reversing the Board's grant of parole, he did not expressly include the 115 among the factors indicating petitioner's unsuitability for parole, and petitioner has thus not shown that the 115 impacted the Governor's decision. Accordingly, under *Spencer* and *Wilson*, the potential use of the 115 in future parole proceedings is too speculative to be considered a collateral consequence, and the action is moot.

**IV.   Conclusion**

The Court finds that petitioner's request for a writ of habeas corpus is moot. The discipline petitioner challenges in the instant petition has been discharged, and petitioner has not shown that the discipline carries collateral consequences which keep his case justiciable. Therefore, respondent's motion must be granted.

Accordingly, it is hereby RECOMMENDED that petitioner's application for a writ of habeas corpus be dismissed and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing

////
////
////

4

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: January 12, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE